UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **VERNON SCHAAF, JULIAN BOIK,** and **ALFRED STREUFERT, on behalf of themselves and others similarly situated,** | Civil No. 05-1319 (JNE/SRN) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| **RESIDENTIAL FUNDING CORPORATION, HELLER FINANCIAL, INC.,** | |
| Defendants, and | |
| **MARSHALL & ISLEY BANK,** | |
| Nominal Defendant. | |

Vernon J. Vander Weide, Esq., on behalf of Plaintiffs

Andrew J. Holly, Esq. and James K. Langdon, Esq. on behalf of Defendant Residential Funding Corporation

Larry D. Espel, Esq. and Monte A. Mills, Esq., on behalf of Defendant Heller Financial Inc.

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Plaintiffs' Motion to Remand (Doc. No. 10). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends denying Plaintiffs' Motion to Remand and retaining jurisdiction over all of Plaintiffs' claims.

1

I.   **BACKGROUND**

Plaintiffs commenced this putative class action (pursuant to Minn. R. Civ. P. 23.02) in Minnesota state court on June 10, 2005.  (Doc. No. 1).  In their Complaint, Plaintiffs allege that they "and members of the class they seek to represent were solicited and induced by Miller & Schroeder Financial, Inc. (MSF) to purchase debentures issued by United Homes, Inc. (UHI)."  (Compl. ¶ 1.)  Plaintiffs allege that UHI and MSF represented to the Securities and Exchange Commission (SEC) that UHI was in full compliance with the loan covenants in its RFC and Heller loan agreements based upon false representations made by Defendants Residential Funding Corporation (RFC) and Heller Financial, Inc. (Heller) to MSF and UHI.  (Id.)  The RFC and Heller representations were repeated in the prospectus used to register UHI's debentures (hereinafter Debentures) with the SEC and various states and to sell UHI's debentures to public investors, including Plaintiffs.  (Id.) Plaintiffs allege the Debentures are now worthless.  (Id.)

Plaintiffs allege that RFC and Heller materially participated in, aided and abetted, and assisted, MSF's and UHI's fraudulent and deceptive conduct by representing to UHI, MSF, the SEC and, indirectly through MSF and UHI's prospectus, to prospective purchasers of the UHI debentures that UHI was in compliance with the applicable loan agreements.  (Id. ¶¶ 2-3.)  Plaintiffs' Complaint contains three counts: Count I alleges that RFC and Heller violated the Minnesota Consumer Fraud Act (Minn. Stat. §§ 8.31, 325F.69); Count II alleges that RFC and Heller committed common law fraud; and Count III alleges that Heller was unjustly enriched by its conduct.  (Id. ¶¶ 519-49.) Within these counts, Plaintiffs also claim that RFC and Heller aided and abetted fraud

and statutory fraud allegedly committed by MSF.

Defendants removed the action to this Court on July 1, 2005 pursuant to the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) which grants original federal jurisdiction over and allows removal of certain state class action suits. (Doc. No. 1.) Plaintiffs now move to remand the action back to state court because they claim CAFA does not cover their claims. (Doc. Nos. 10, 16.)

## II.  PARTIES' POSITIONS

The parties agree that the Complaint sets forth only state law claims. (Doc. No. 1; Doc. No. 16 at 8.) While Plaintiffs do not dispute that Defendants' removal satisfies all of the elements of removal under CAFA, they argue that this Court lacks jurisdiction over this action because CAFA, the relevant provision of which is codified at 28 U.S.C. § 1453(d)(3), exempts from its removal provisions "any class action that solely involves . . . claim[s] that relate to the rights, duties . . . and obligations relating to or created by or pursuant to any securities" (Doc. No. 16 at 3). Plaintiffs assert: "The claims in this case relate to duties and obligations relating to a security. Debentures are 'securities' within the meaning of section 2(a)(1) of the Securities Act of 1933," codified at 15 U.S.C. § 77b(a)(1). (Id. at 4.) Plaintiffs claim:

> the "duties and obligations" at issue here were those imposed upon Defendants to tell the truth—and not lie—about UHI's compliance with their respective loan agreements in response to the underwriter's request for the lenders' certificates stating that UHI was in compliance with Defendants' loan agreements. The underwriter's request was prompted by the SEC's demand that the prospectus used to sell the debentures disclose the status of UHI's compliance with its senior lenders' loan agreements.

(Id. at 4.) Therefore, Plaintiffs argue that their claims are exempt from CAFA's removal provisions and that this case should be remanded to state court. (Id.)

3

Defendants do not dispute that the UHI debentures are securities as defined under CAFA.  Heller, however, counters that Plaintiffs' claims do not fall within the CAFA exception Plaintiffs cite because their claims are "several steps removed from the Debentures" and thus, do not, "relate[] to the rights, duties . . . and obligations relating to . . . any security."  (Doc. No. 24 at 3.)  Heller argues that:

> The SEC required [MSF], the underwriter of the Debentures, to disclose the status of [UHI's] lending arrangements in the Prospectus.  [MSF] asked [UHI] to obtain letters from its lenders concerning the status of its credit lines.  At [UHI's] request, Heller provided such a letter.  It is a long stretch to say that Plaintiffs' claims against Heller involve duties or obligations "relating to" the Debentures within the meaning of the § 1453(d)(3) exception.

(Id. at 4.)  Heller also argues that the legislative history of the CAFA exemption shows that Congress intended the exception to be narrowly construed.  (Doc. No. 24 at 6.)  RFC adds that Plaintiffs' claims do not "solely" allege that RFC or Heller "breached any term of the Debentures, any fiduciary duty created by the Debentures, or the state or federal securities laws under which the [d]ebentures were issued."  (Doc. No. 27 at 8.)  RFC further argues that:

> This case is surely not a dispute between a corporation and its shareholders about the meaning of certain securities or corporate duties created thereunder.  Rather, Plaintiffs have alleged garden-variety state law fraud and unjust enrichment claims that claim that RFC and Heller breached a common law duty to "tell the truth."  The allegations in the Complaint are simply not "based upon" an allegation that RFC or Heller breached a duty created by the Debentures.

(Id.)

The parties also disagree as to which party has the burden of persuasion on Plaintiff's motion to remand.  RFC argues that "[b]ecause Plaintiffs seek to invoke an exception to CAFA's baseline diversity jurisdiction rule, [Plaintiffs] bear the burden of

demonstrating that exception's application." (Doc. No. 27 at 4.) In support of this position, Heller cites to a U.S. Senate Judiciary Committee report to CAFA which provides: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)." (Doc. No. 24 at 9 (citing S. Rep. 109–14, at 45.) But Plaintiffs argue that "[i]t is well established that there exists a strong presumption against removal jurisdiction" and that "[t]his policy is grounded on the power reserved to the states by the Constitution." (Doc. No. 16 at 8.) Plaintiffs "acknowledge that the Senate report reflects a preference for federal jurisdiction over cases subject to CAFA," but argue that "the [c]onstitutional antecedents of the strong presumption against removal jurisdiction . . . must prevail over an expression of [c]ongressional intent to the contrary." (Id. at 9.)

## III.   DISCUSSION

A federal court must remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (2000). "Federal district courts have original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 392 n.6 (1987) (quoting 28 U.S.C. § 1331). "Whenever a separate and independent claim or cause of action within" federal question "jurisdiction . . . is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." 28 U.S.C. § 1441(c) (2000).

Courts apply the "well-pleaded complaint" rule to determine if federal question jurisdiction exists. Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000). The "well-pleaded complaint" rule "provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. All doubts concerning federal jurisdiction must be resolved in favor of remand. In re Bus. Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam). If one federal claim is present on the face of the complaint, the entire case is properly removed, and a federal court cannot remand. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1037 (8th Cir. 1999); see also County of St. Charles v. Mo. Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997) (finding that a district court has no discretion to remand a claim that states a federal question), cert. denied, 522 U.S. 859 (1997). "A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal district court." Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1003 (8th Cir. 2000). Pursuant to 28 U.S.C. § 1367(a), a court may retain supplemental jurisdiction over any state law claims that form part of the same case or controversy as a plaintiff's federal claims. Williams v. Ragnone, 147 F.3d 700, 703 (8th Cir. 1998).

### A.  Assignment of the Burden of Persuasion

As noted above, the parties disagree as to which party bears the burden of persuasion on Plaintiff's motion to remand. Plaintiffs concede that the legislative history of CAFA suggests Plaintiffs should bear the burden of proving removal was improper. But, as the Supreme Court has stated:

> the policy of the successive acts of Congress regulating the jurisdiction of

federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941). In the Eighth Circuit, in the absence of diversity jurisdiction, "[t]he party opposing remand has the burden of establishing federal subject-matter jurisdiction." Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002). The question before this Court is whether CAFA shifts the burden of persuasion. The Seventh Circuit recently answered the question this way:

> [Defendant] maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.
> . . . . [N]aked legislative history has no legal effect, as the Supreme Court held in Pierce v. Underwood, 487 U.S. 552, 566-68 . . . (1988). A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a

statute with the President's signature (or by a two-thirds majority to override a veto).

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) (Easterbrook, J.); see also Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, at *2 (E.D. Mo. Sept. 14, 2005) (slip opinion) (finding in a CAFA removal case that the court was "compelled to follow the precedent of the Eighth Circuit Court of Appeals which places the burden on the party seeking removal"); see, e.g., Comes v. Microsoft Corp., No. 05-CV-562, 2005 WL 3454427, *4 (S.D. Iowa Nov. 22, 2005) (slip opinion) (finding in a CAFA removal case that "[a]s the party seeking to remove this case to federal court and opposing remand, the burden is on [defendant] to demonstrate that removal was proper").

In the absence of any corresponding statutory text addressing the burden of persuasion, the Court will not impute to Congress the views of thirteen Senators. Therefore, the Court applies the pre-CAFA law of this circuit that "[t]he party opposing remand has the burden of establishing federal subject-matter jurisdiction." Green, 279 F.3d at 596. Thus, to remain in this Court, Defendants must show that "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Krispin, 218 F.3d at 922.

### B.      Applicability of the CAFA Removal Text

The parties here agree that each of the claims asserted in this action are state law claims. The question before the Court is whether this Court has original jurisdiction over these claims pursuant to some federal statute. Defendants contend that CAFA gives this Court original jurisdiction over Plaintiffs' state law claims. (Doc. No. 1.) CAFA

allows a defendant to remove: (1) any civil action filed under Federal Rule of Civil Procedure 23 or similar state statute (i.e., a "class action"); (2) involving more than 100 individuals; (3) where the amount in controversy is over $5 million; and (4) where any member of the class of plaintiffs is a citizen of a state different from any defendant.  28 U.S.C. §§ 1332(d)(1)(B), (d)(2), (d)(11)(A)-(B).[1]  Plaintiffs do not dispute Defendants' contention (Doc. No. 1 at 3-6; Doc. No. 24 at 3) that each of the above four elements is present on the face of its pleadings.  In any case, Defendants have shown that at least two of the elements are present on the face of the Complaint, because Plaintiffs: (1) seek a "class action" as defined by CAFA (Compl. ¶ 14); and (2) allege they purchased Debentures valued at approximately $7 million (Compl. ¶¶ 12, 21).  As to the minimal diversity and numerosity requirements, Defendants contend that these elements are not plead in the Complaint but rely on facts generated in what Defendants characterize as Plaintiffs' attorneys earlier "essentially identical class action," titled <u>First National Bank of the North v. Miller & Schroeder Financial</u>, File No. DC MC 00-15958 (Minn. Dist. Ct. no settlement date provided)  (Doc. No. 1 ¶ 3.)  Plaintiffs incorporate information gathered and documents generated in this prior action in their present complaint. (Compl. at 16 n.1.)  According to Defendants, that class action alleged the same claims against RFC and Heller as in the present action but put forward different putative class representatives.  (Doc. No. 1 ¶ 3.)  That action was also brought in state court, the motion for class certification was denied, and Heller and RFC settled with the putative

---

[1] The action must also have been commenced on or after February 18, 2005, the effective date of CAFA.  <u>See</u> Pub. L. 109-2, 119 Stat. 4 (2005).  The present action was commenced in state court on June 10, 2005.  (Doc. No. 1.)

class representatives. (Id.) According to Defendants, the plaintiffs in the prior action alleged that approximately 400 individuals (Id.) purchased the same Debentures at issue here and that the plaintiffs resided in multiple states across the United States (Id. ¶ 12.) Given these specific unrebutted assertions by Defendants coupled with Plaintiffs' incorporation of at least portions of the earlier class action in their Complaint, the Court finds Defendants have shown that the elements of a CAFA removal exist in Plaintiffs' current action.

Therefore, unless Plaintiffs' action is excepted from the removal statute, jurisdiction in this Court is proper and Plaintiffs' remand motion should be denied. The application of the exception claimed by Plaintiffs, 28 U.S.C. § 1453(d)(3), turns on how closely "the rights, duties . . . and obligations" provided in the exception must be tethered to "any security." Id. Congress set forth, in part, that such obligations must "relat[e] to . . . any security." Id. Plaintiffs contend that the Defendants had a "duty" or "obligation" to "tell the truth about UHI's compliance with their respective loan agreements in response to the underwriter's request" (prompted by the SEC) "for the lenders' certificates stating that UHI was in compliance with Defendants' loan agreements." (Doc. No. 16 at 4.) The Court finds that Plaintiffs' interpretation fails based upon the express text of the statute. The exception only applies where the class action "solely involves . . . a claim that relates to the . . . obligations relating to . . . any security." § 1453(d)(3). The "solely involves" language narrows the broader "relating to" language. The Court finds this language limits the reach of the exception to those traditional state law claims between a corporation and its shareholders for, as example, breach of the terms of the security at issue or of the underlying corporate charter.

Plaintiffs' claims also stretch too far the plain meaning of "relating to" as set forth in the statute.

Moreover, to the extent the statute leaves room for Plaintiffs' interpretation, that interpretation is belied by the purpose of the statute as set forth in the contemporaneous legislative history of CAFA. Where the face of the statute does not resolve the question before the Court, the Court looks to the legislative history of the statute in an attempt to bring further clarity to the phrase. See Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 800-01 (8th Cir. 1998) ("Having determined that there is ambiguity in the statute because it is subject to more than one reasonable interpretation, we next turn to the legislative history."), cert. denied, 525 U.S. 921 (1998). To the extent the exception is ambiguous, the Court finds that the legislative history of the exception supports Defendants' position that Plaintiffs' claims are not covered by the exception. In particular, the Court reviewed the U.S. Senate Judiciary Committee's Report prepared in connection with the passage of CAFA, S. Rep. 109-14, reprinted in 2005 U.S.C.C.A.N. 3, and cited by the parties as an authoritative source of the legislative history of CAFA. (Doc. No. 16 at 6; Doc. No. 24 at 6; Doc. No. 7 n.2). The verbatim CAFA exception text Plaintiffs cite in support of their motion to remand is codified in two places in the United States Code, in a removal statute, codified at 28 U.S.C. § 1453(d)(3), and in the diversity jurisdiction statute, codified at 28 U.S.C. § 1332(d)(9). Plaintiffs concede that the Senate Report's discussion of the diversity jurisdiction exception also applies to the removal statute exception. (Doc. No. 16 at 6 & n.4.) In discussing the diversity jurisdiction statute, the Senate Report describes the intent of the exceptions set forth there as follows:

11

> [CAFA] excepts . . . those class actions that solely involve claims that relate to matters of corporate governance arising out of state law. The purpose of this provision is to avoid disturbing in any way the federal vs. state court jurisdictional lines already drawn in the securities litigation class action context by the enactment of the Securities Litigation Uniform Standards Act of 1998 (P.L. 105-353).
> 
>     The Committee intends that this exemption be narrowly construed. By corporate governance litigation, the Committee means only litigation based solely on (a) enterprises such as corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, and business trusts; (b) state common law regarding the duties owed between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises.
> 
>     This exemption would apply to a class action relating to a corporate governance claim filed in the court of any state. Consequently, it would apply to a corporate governance class action regardless of the forum in which it may be filed, and regardless of whether the law to be applied is that of the State in which the claim is filed.
> 
>     . . . .
>     The . . . exemption . . . is also intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise . . . .

S. Rep. 109-14, 45, reprinted in 2005 U.S.C.C.A.N. 3, 42-43. Unlike the legislative history Defendants cite in support of their position that Plaintiffs bear the burden of persuasion showing remand is proper, the above legislative history is directly tied to and elucidates existing statutory text. The Senate's report reflects a contemporaneous understanding that the changes enacted by the CAFA (1) expand the scope of federal jurisdiction over certain class actions; (2) set forth narrow exceptions to the Court's original jurisdiction of those actions; and (3) set forth narrow exceptions to the corresponding removal statute. The Court finds that this legislative intent dictates retaining jurisdiction over the claims presented in this lawsuit. Plaintiffs' claims are not of the type intended to be excepted by Congress—for example, those related to corporate governance or the terms of securities spelled out in formative documents of

the corporation. Indeed, Plaintiffs' claims are not even leveled against the corporation that registered the securities at issue. The connection to the securities Plaintiffs allege is too tenuous to fit within the narrow confines of the exception envisioned by Congress.

Based upon the above express statutory language and its underlying legislative history, the Court finds that Defendants have met their burden of showing that this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1453. Therefore, the Court recommends denying Plaintiffs' Motion to Remand (Doc. No. 10).

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

    **1.**    Plaintiffs' Motion to Remand (Doc. No. 10) be **DENIED** and jurisdiction retained over all of the claims or causes of action presented in Plaintiffs' Complaint.

Dated: January 4, 2006

                          s/ Susan Richard Nelson
                          SUSAN RICHARD NELSON
                          United States Magistrate Judge

Under D. Minn. L.R. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 19, 2005 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.